Case No. 22-1322
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

MARTA SANCHEZ; et al.,

      Appellants/Petitioners,

v.

CITY OF LITTLETON; et al.,

      Appellees/Respondents.

---

On Appeal from the United States District Court for the District of Colorado
The Honorable Regina M. Rodriguez
District Court No. Civil Action No. 19-cv-1871-RMR-MEH

---

## APPELLEES' JOINT ANSWER BRIEF

---

**BERG HILL GREENLEAF RUSCITTI LLP**
Josh A. Marks
David J. Goldfarb
1712 Pearl Street
Boulder, Colorado 80302
Phone: (303) 402-1600
jam@bhgrlaw.com
djg@bhgrlaw.com
*Attorneys for Defendant/Appellee Brian Martinez*

March 13, 2023

**SGR, LLC**
Eric M. Ziporin
Jonathan N. Eddy
3900 E. Mexico Ave., Suite 700
Denver, Colorado 80210
Phone: (303) 320-0509
eziporin@sgrllc.com
jeddy@sgrllc.com
*Attorneys for Littleton Defendants/Appellees*

Oral Argument is Requested

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRIOR OR RELATED APPEALS ............................................................1

II.   STATEMENT OF THE ISSUES .........................................................1

III.  STATEMENT OF THE CASE ..........................................................1

IV.  STATEMENT OF THE FACTS ........................................................3

V.   SUMMARY OF THE ARGUMENT ...............................................13

VI.  ARGUMENT ...................................................................................14

      A.    THE DISTRICT COURT CORRECTLY HELD IT WAS PLAINTIFFS' BURDEN TO OVERCOME DEFENDANTS' QUALIFIED IMMUNITY ................................................................14

      B.    THE DISTRICT COURT CORRECTLY HELD IT WAS PLAINTIFFS' BURDEN TO PROVIDE CLEARLY ESTABLISHED LAW ......................................................................19

            1.   THE CLEARLY ESTABLISHED LAW INQUIRY DEMANDS FACTUAL CORRESPONDENCE BETWEEN LEGAL PRECEDENT AND THE CASE AT BAR .............................................19

            2.   THE SUPREME COURT AND TENTH CIRCUIT HAVE NOT BACKED AWAY FROM THE "PARTICULARITY" REQUIREMENT NECESSARY TO SATISFY THE CLEARLY ESTABLISHED LAW PRONG OF QUALIFIED IMMUNITY .................................................................................21

      C.    THE DISTRICT COURT CORRECTLY HELD PLAINTIFFS FAILED TO PROVIDE CLEARLY ESTABLISHED LAW ............25

VII.    CONCLUSION.................................................................................33

VIII.   STATEMENT REGARDING ORAL ARGUMENT ..................................34

# TABLE OF AUTHORITIES

Page

**Cases**:

*Aldaba v. Pickens*
 844 F.3d 870 (10th Cir. 2016) ..................................................................25

*A.N. ex rel. Ponder v. Syling*
 928 F.3d 1191 (10th Cir. 2019) ................................................................24

*Brosseau v. Haugen*
 543 U.S. 194 (2004)............................................................................20,21

*Butz v. Economon*
 438 U.S. 478 (1978)..................................................................................16

*Carabajal v. City of Cheyenne, Wyoming*
 847 F.3d 1203 (10th Cir. 2017) ...........................................................29, 31

*Casey v. Federal Heights*
 509 F.3d 1278 (10th Cir. 2007) ................................................................23

*Cavanaugh v. Woods Cross City*
 625 F.3d 661 (10th Cir. 2010) ..................................................................32

*City of Escondido, Cal. v. Emmons*
 139 S. Ct. 500 (2019)................................................................................21

*City of Tahlequah, Oklahoma v. Bond*
 142 S. Ct. 9 (2021)..............................................................................19, 27

*County of Sacramento v. Lewis*
 523 U.S. 833 (1998)..................................................................................28

*Cox v. Glanz*
 800 F.3d 1231 (10th Cir. 2015) ................................................................14

*Davis v. Scherer*
    104  S. Ct. 3012 (1984)......................................................................15

*Doe v. Woodard*
    912 F.3d 1278 (10th Cir. 2019) ....................................................24

*Est. of Joseph v. Bartlett*
    981 F.3d 319 (5th Cir. 2020) .........................................................15

*Estate of Booker v. Gomez*
    745 F.3d 405 (10th Cir. 2014) ...............................................23. 28

*Felders v. Malcom*
    755 F.3d 870 (10th Cir. 2014) ......................................................14

*Frasier v. Evans*
    992 F.3d 1003 (10th Cir. 2021) ....................................................23

*Gomez v. Toledo*
    446 U.S. 635 (1980)................................................................16, 17

*Harlow v. Fitzgerald*
    457 U..S. 800 (1982)...............................................................16, 17

*Heard v. Barr*
    766 F. App'x 612 (10th Cir. 2019) ..............................................16

*Hope v. Pelzer*
    536 U.S. 730 (2002)......................................................................21

*Huff v. Reeves*
    996 F.3d 1082 (10th Cir. 2021) ..............................................26, 28

*Kisela v. Hughes*
    138 S. Ct. 1148 (2018)..............................................19, 20, 21, 32

*Lewis v. City of Edmond*
    48 F.4th 1193 (10th Cir. 2022) ...............................................................21, 28

*Lowe v. Raemisch*
    864 F.3d 1205 (10th Cir. 2017) .......................................................25

*Luchetti v. New Mexico State Pers. Bd.*
    2022 WL 2678826, at *4 (10th Cir. July 12, 2022) .....................................25

*Lutz v. Weld Cnty. Sch. Dist. No. 6*
    784 F.2d 340 (10th Cir. 1986) .......................................................15

*Mahdi v. Salt Lake Police Dep't*
    54 F.4th1232 (10th Cir. 2022) ......................................................27

*Mayfield v. Bethards*
    826 F.3d 1252 (10th Cir. 2016) ...................................................21, 22

*Mick v. Brewer*
    76 F.3d 1127 (10th Cir. 1996) .......................................................15

*Morris v. Noe*
    672 F.3d 1185 (10th Cir. 2012) .......................................................23

*Mullenix v. Luna*
    577 U.S. 7 (2015)......................................................20, 23, 25, 30

*Olsen v. Layton Hills Mall*
    312 F.3d 1304 (10th Cir. 2002) .......................................................16

*Pauly v. White*
    814 F.3d 1060 (10th Cir. 2016) .......................................................22

*Plumhoff v. Rickard*
    572 U.S. 765 (2014).................................................................29, 30

*Riggins v. Goodman*
    572 F.3d 1101 (10th Cir. 2009) .......................................................14

*Sawyers v. Norton*
    962 F.3d 1270 (10th Cir. 2020) ....................................................16

*Scott v. Harris*
    550 U.S. 372 (2007)...................................................................29

*Surat v. Klamser*
    52 F.4th 1261 (10th Cir. 2022) .....................................................23

*Taylor v. Riojas*
    141 S. Ct. 52 (2020)...................................................................23

*Thomas v. Durastanti*
    607 F.3d 655 (10th Cir. 2010) ................................................24, 31

*Tillman v. Douglas Cnty.*
    817 F. App'x 586 (10th Cir. 2020) ................................................18

*Tonkovich v. Kan. Bd. of Regents*
    159 F.3d 504 (10th Cir. 1998) .....................................................32

*Torres v. Madrid*
    141 S. Ct. 989 (2021).................................................................26

*United States v. Carson*
    793 F.2d 1141 (10th Cir. 1986) ...................................................16

*United States v. Lanier*
    520 U.S. 259 (1997)...................................................................19

*Vette v. K-9 Unit Deputy Sanders*
    989 F.3d 1154 (10th Cir. 2021) ...................................................32

*White v. Pauly*
    580 U.S. 73 (2017).....................................................................22

## <u>Other Authorities</u>

Kenneth Duvall, BURDENS OF PROOF AND QUALIFIED IMMUNITY
      37 S. Ill. U.L.J. 135, 145 (2012)......................................................................16

## I.     PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## II.     STATEMENT OF THE ISSUES

1.     Was the District Court correct in determining it was Plaintiffs' burden to overcome Defendants' qualified immunity?

2.     Was the District Court correct in determining Plaintiffs bore the burden of identifying appellate precedent finding a constitutional violation under facts sufficiently similar to the particular circumstances of this case in order to satisfy the clearly established law prong of qualified immunity?

3.     Was the District Court correct in determining Plaintiffs failed to carry their burden under the clearly established law prong of qualified immunity to show it was clearly established on June 30, 2017, that an officer was precluded from using deadly force where multiple fleeing felony suspects had repeatedly refused to surrender, led police on an extended high-speed pursuit, and at times drove at officers?

## III.     STATEMENT OF THE CASE

This case arises out of a multifaceted police pursuit and shooting involving three suspects, four police officers, and continuous efforts to stop the suspects' vehicle at three separate locations. After fleeing the scene of an armed carjacking

in a stolen vehicle, Plaintiffs/Appellees Marta Sanchez, Stephanie Lopez, and Dominic Martinez (collectively, "Plaintiffs") led police on a high-speed pursuit covering over six miles in Metro Denver. Plaintiffs ran multiple red lights, exceeded speeds of 100 MPH, and narrowly avoided collision with innocent motorists. Given the severity of the crimes at issue, the danger Plaintiffs posed to the officers and the public, and because Plaintiffs were known to be armed and had reportedly shot at the carjacking victim, police attempted three separate vehicle immobilization techniques which stopped the suspect vehicle at their respective locations—though only momentarily. Each temporary immobilization was followed by officers exiting their vehicles and ordering Plaintiffs to surrender. Plaintiffs did not surrender, and at each of the three locations they drove the vehicle at officers. In fear for their lives, the lives of their fellow officers and the public, Defendants fired on the driver at various times throughout the pursuit—as Plaintiffs attempted to run them down. Ms. Sanchez (the driver) is partially paralyzed due to her conduct and Ms. Lopez (a passenger) was inadvertently shot and killed. Mr. Martinez (a passenger) evacuated the vehicle prior to the second stop and fled the scene; he was not shot.

Though Plaintiffs maintain they had surrendered at each of the locations prior to officers opening fire, the video and other undisputed evidence

demonstrates otherwise. Following each of the three stops, Ms. Sanchez steered and drove the vehicle toward officers while continuing to flee. Given the totality of these circumstances, Defendants were justified in using deadly force to stop the vehicle and end the dangerous chase, and no clearly established law demonstrates otherwise. The District Court's decision to extend qualified immunity should be affirmed.

## IV.    STATEMENT OF THE FACTS

Just before midnight on the evening of June 29, 2017, Officers Anthony Guzman, Joseph Allen Carns, and Luke McGrath (collectively, the "Littleton Defendants") were on-duty with the Littleton Police Department ("LPD") when they received a dispatch report that a white Chevy Malibu had been carjacked by four individuals and that one of the suspects was armed and had fired a shot at or near the victim's head.  [Supp. App'x Vol. I, p. 194 at ¶¶ 1–2, p. 202 at ¶¶ 1–2; p. 208 at ¶¶ 1–2, and p. 216 at ¶ 10.] In full police uniform and each driving a fully marked police SUV, the Littleton Defendants began responding to the location of the call, which had been reported at a Dunkin Donuts, near the 4700 block of W. Mineral Avenue, in Littleton.  [Supp. App'x Vol. I, p. 195 at ¶ 3, p. 202 at ¶ 3, p. 208 at ¶ 3, and p. 215 at ¶ 1.]

3

As the Littleton Defendants proceeded southbound on Santa Fe Drive, they observed the white Malibu driving northbound on Santa Fe, near the 6200 block, at a high rate of speed. [Supp. App'x Vol. I, p. 195 at ¶ 4, p. 203 at ¶ 4, p. 209 at ¶¶ 4–5.] Though unknown to the officers, there were only three suspects in the vehicle at that time. Marta Sanchez was driving, Stephanie Lopez was in the front passenger seat, and Dominic Martinez was in the backseat. [Supp. App'x Vol. I, p. 218 at 190:3–10, p. 228 at 114:23–25.][1]

The Littleton Defendants turned around and began following the Malibu with lights and sirens activated. The suspects did not yield and instead reached speeds exceeding 100 MPH. Given the totality of these circumstances, the Littleton Defendants were given authorization by their commander to initiate a pursuit. [Supp. App'x Vol. I, pp. 195–96 at ¶¶ 5–7, p. 203 at ¶¶ 4–6, p. 209 at ¶¶ 6–7, and p. 220 at 205:2–9.]

Officer Carns, who was leading the pursuit at that time, observed as the suspects ran the red light at Oxford Avenue and nearly collided with a civilian motorcyclist. The suspects then ran the red light at Dartmouth Avenue and began weaving between lanes. [Supp. App'x Vol. I, p. 196 at ¶ 8, p. 203 at ¶ 6, p. 209 at ¶

---

[1] Transcript citations are to the Appendix or Supplemental Appendix page number(s) followed by the transcript line numbers.  In those instances where there are four transcript pages to an Appendix page, citations are to the Appendix page number(s) followed by the original transcript page and line numbers.

4

7, and p. 220 at 205:10–13.] Marta Sanchez later admitted she ran from police to avoid capture and the possibility of returning to prison. [Supp. App'x Vol. I, p. 219 at 201:6–12.]

Because the suspects were believed to be armed and given their excessive speeds, erratic maneuvering, and total disregard for multiple traffic lights, Officer Carns requested and was authorized to perform a Pursuit Intervention Technique ("PIT maneuver") once vehicle speeds had decreased. [Supp. App'x Vol. I, p. 196 at ¶ 8, p. 203 at ¶ 6, and p. 209 at ¶ 8.] As the chase continued north on Santa Fe and approached Arkansas Avenue, the Malibu appeared to skid and decelerate to less than 40 MPH. Officer Carns, intending to stop the vehicle and end the pursuit, performed the PIT maneuver at this time, causing the Malibu to spin roughly 170 degrees and come to rest, facing in a southeast direction on Santa Fe. [Supp. App'x Vol. I, p. 196 at ¶ 8, p. 203 at ¶ 7, and p. 209 at ¶ 8.] These events were captured on video. [*See* **Exhibits 1-A** and **1-B**.][2]

---

[2] **Exhibit 1-A**: Surveillance footage of stop one (original format); **Exhibit 1-B**: Surveillance footage of stop one (enhanced). All video exhibits referenced herein will be submitted to this Court (and opposing counsel) via thumb drive pursuant to 10th Cir. R. 30.3, and are identical to the recordings considered by the District Court.

To prevent the suspects from escaping, Officers Carns and Guzman positioned their vehicles to the southwest and south of the Malibu (respectively), while Officer McGrath positioned his vehicle immediately to the north. Defendants exited their vehicles with guns drawn and began shouting commands for the suspects to surrender. Given the time of night and the vehicle's tinted windows, they could not see into the Malibu's passenger compartment. [Supp. App'x Vol. I, pp. 196–97 at ¶¶ 9–11, p. 203 at ¶ 8, p. 210 at ¶¶ 9–10; **Exhibits 1-A** and **1-B**.] Instead of obeying these commands, Ms. Sanchez revved the Malibu's engine, shifted it into drive, and accelerated forward while steering the vehicle directly toward Officer Guzman, who immediately prior to this had been standing off to the driver side of the Malibu. [Supp. App'x Vol. I, p. 197 at ¶ 12, p. 204 at ¶ 9, p. 210 at ¶ 11; **Exhibits 1-A** and **1-B**.]

In response to the vehicle coming at him and in fear for his life, Officer Guzman opened fire toward the driver's portion of the Malibu. Officer Guzman did not fire until the vehicle started moving directly at him. Officer McGrath, who was then facing the Malibu's driver-side door, also opened fire to stop the vehicle and save Officer Guzman. Officer Carns did not fire his weapon at this location and did not witness the shooting given his location, though he heard shots being fired and

6

could not identify whether the suspects had opened fire. [Supp. App'x Vol. I, p. 197 at ¶¶ 12–15, p. 203 at ¶ 8, p. 210 at ¶¶ 12–13; **Exhibits 1-A** and **1-B**.]

Officers Guzman and McGrath fired multiple rounds as fast as they could. Officer McGrath stopped shooting before the vehicle passed Officer Guzman, and Officer Guzman stopped firing at the point he became perpendicular to the front driver's-side door, before the vehicle had completely passed him. [Supp. App'x Vol. I, p. 197 at ¶¶ 13–15, p. 210 at ¶ 13.] From this exchange, Ms. Sanchez was shot twice (once in the leg and once in the chest) and Ms. Lopez was not hit. [Supp. App'x Vol. I, pp. 221–22 at 210:23–211:5, 215:1–216:1, and 217:17–22.] Dominic Martinez alleges he does not know whether he was hit, though he previously told investigators he was not shot during the incident. [Supp. App'x Vol. I, p. 229 at 131:5–22; **Exhibit 4**[3], 9:46:50–9:47:15.] Instead of stopping, Plaintiffs fled eastbound on Arkansas Avenue. The Littleton Defendants returned to their vehicles and continued the pursuit, now with Officer Guzman as the lead vehicle. [Supp. App'x Vol. I, p. 197 at ¶ 16, p. 204 at ¶¶ 9–10, p. 211 at ¶ 14; **Exhibits 1-A** and **1-B**.]

Though unknown to the Littleton Defendants at the time, Dominic Martinez jumped from the Malibu during this portion of the pursuit, fled the scene on foot,

---

[3] **Exhibit 4**: Video recorded interview between Dominic Martinez and the Denver Police. Conventionally filed with the Court via thumb drive.

and had no further involvement. [Supp. App'x Vol. I, p. 223 at 220:1–7, p. 229 at 130:2–7 and 131:10–14.]

Officer Guzman clipped Plaintiffs' vehicle in an effort to terminate the pursuit. Officers Carns and McGrath attempted to trap the suspects by positioning their vehicles immediately to the north and south of the Malibu (respectively). [Supp. App'x Vol. I, p. 198 at ¶¶ 17–18, p. 204 at ¶ 10, p. 211 at ¶ 15.] These events were captured on video. [*See* **Exhibit 2**.][4] Officers Carns and Guzman then exited their vehicles. Officer Carns made direct eye contact with Ms. Lopez (in the passenger seat) and began yelling commands for her to show her hands. Ms. Lopez immediately began to look and reach toward the vehicle's floorboard. Officer Carns believed she was reaching for a gun and took cover behind Officer Guzman's patrol vehicle, though he could not see Officer Guzman from this location. [Supp. App'x Vol. I, p. 198 at ¶¶ 18–20, p. 204 at ¶ 11, p. 211 at ¶ 15; **Exhibit 2**.]

The Malibu then began to quickly reverse toward Officer Guzman and ultimately bounced over the curb. In fear for his life, Officer Guzman fired two rounds through the rear windshield, toward Ms. Sanchez in the driver's seat. He had no intention of injuring the passenger. Officer McGrath did not discharge his

---

[4] **Exhibit 2**: Surveillance footage of stop two (original format). Conventionally filed with the Court via thumb drive.

firearm. [Supp. App'x Vol. I, p. 198 at ¶¶ 19–20, p. 211 at ¶ 15; **Exhibit 2**.] Because Officer Carns had just observed the vehicle bounce over the curb, he believed the suspects had run over Officer Guzman. In fear for his life and the lives of others, Officer Carns took aim toward the driver's portion of the vehicle and fired five rounds through the rear windshield as fast as he could. [Supp. App'x Vol. I, pp. 204–05 at ¶ 11–13.] One of his rounds inadvertently struck Ms. Lopez (the front-seat passenger) in the head, killing her. [Supp. App'x Vol. I, p. 205–06 at ¶¶ 12 and 16, pp. 223–24 at 221:22–222:4, and p. 225 at 228:4–13.] Ms. Sanchez again drove away from the officers and they resumed the pursuit. [Supp. App'x Vol. I, p. 198 at ¶ 20, p. 205 at ¶ 13; **Exhibit 2**.]

While traveling southbound on Bannock Street, the Malibu started to skid and then momentarily came to a stop on Bannock, perpendicular to the lanes of travel. Within moments of stopping, the Malibu again began to drive forward. Approximately two seconds later, Officer Guzman, out of concern for officer and public safety, rammed the Malibu from the side to disable it and end the pursuit. [Supp. App'x Vol. I, p. 199 at ¶¶ 22–23, p. 211 at ¶ 16.] This event was captured on video. [*See* **Exhibit 3-A** and **Exhibit 3-B**.][5] Ms. Sanchez suffered no specific

---

[5] **Exhibit 3-A**: Surveillance footage of stop three (original format); **Exhibit 3-B**: Surveillance footage of stop three (enhanced). Conventionally filed with the Court via thumb drive.

injury from the Malibu being rammed, and Ms. Lopez had perished from being shot in the head. [Supp. App'x Vol. I, pp. 290–92 at 228:4–13, 235:1–2.] Officers Guzman and McGrath exited their vehicles and began issuing commands for Plaintiffs to surrender. [Supp. App'x Vol. I, p. 199 at ¶¶ 23–24, p. 211–12 at ¶¶ 16–17.]

Officer Martinez arrived on-scene just before Officer Guzman rammed the Malibu. While trying to find the pursuit, Officer Martinez asked for and received updates from dispatch and learned: (1) that a carjacking involving four suspects and the discharge of a gun inside the vehicle had just occurred; (2) the make and model of the vehicle involved in the pursuit; (3) that shots were fired during the Littleton Defendants' chase of the Malibu in the area of Florida Avenue and Santa Fe Drive; (4) that the Littleton Defendants had requested permission to execute a targeted impact to the Malibu at least once; and (5) that the Malibu reached speeds exceeding 90 mph during the course of the pursuit. [Supp. App'x Vol. I, p. 255 at 31:6–11 and 34:17–36:25, p. 271 at ¶ 4.]

Officer Martinez immediately exited his vehicle and took up a position south of the Malibu, near Louisiana Avenue. Officer Martinez was off to the driver's side of the Malibu, as it remained facing west. [Supp. App'x Vol. I, p. 199 at ¶¶ 23–24, pp. 211–12 at ¶¶ 16–17; **Exhibits 3-A** and **3-B**.] While Officer Martinez was

taking cover, the Malibu was idling in the middle of Bannock Street. [Supp. App'x Vol. I, p. 260 at 49:10–15; **Exhibit 3-A** at 00:04:48 (Officer Martinez is in the upper left corner of the video with his flashlight illuminated).][6] From his position, Officer Martinez could not see inside the Malibu. [Supp. App'x Vol. I, p. 260 at 49:16–18 and p. 261 at 55:5–10.] He did not open fire from this position. [Supp. App'x Vol. I, p. 260 at 51:10–15.]

Officer Martinez then moved from his position to an area behind a van on the east side of Bannock Street and out of the potential line of fire of the Littleton Defendants who had positioned themselves to the north of the Malibu. [Supp. App'x Vol. I, p. 260 at 50:2–24; **Exhibit 3-A** at 00:04:53.] Officer Martinez began to quickly walk along the south edge of the small parking lot in front of the building he had used for cover. [Supp. App'x Vol. I, p. 261 at 53:17–20; **Exhibit 3-A** at 00:04:45–00:04:56.] He could not see inside the Malibu as he began to move to the east, nor could he tell whether there were any passengers inside the car. [Supp. App'x Vol. I, p. 261 at 54:11–13, 54:23–25, 55:5–10, and p. 267 83:24–84:6.]

Approximately 17 seconds after being rammed, the Malibu accelerated forward from its stopped position and made a controlled left turn toward Officer

---

[6] Time-stamp citations to the surveillance footage of Stop 3 refer to the white time stamp text located in the bottom left of the video player window marked "CH 3."

Martinez. [Supp. App'x Vol. I, pp. 199–200 at ¶¶ 24–28, pp. 211–12 at ¶¶ 16–17, p. 254 21:10–20, p. 261 at 56:19-23; **Exhibit 3-A** at 00:04:57–00:05:00.] In fear for his life, and once the Malibu had come within approximately five feet of his position, Officer Martinez fired five rounds at the driver's side window. [**Exhibit 3-A** at 00:05:00–00:05:02.] Officer Guzman opened fire as well, firing 11 rounds through the Malibu's rear windshield, toward the driver, to save Officer Martinez and protect the public by ending the pursuit. [Supp. App'x Vol. I, pp. 199–200 at ¶¶ 24–28, pp. 211–12 at ¶¶ 16–17; 261 at 56:21–23, p. 262 at 57:11–14, p. 268 at 110:20–21, 110:24–111:2, and p. 269 at 122:10–13; **Exhibits 3-A** and **3-B**.]

The Malibu ultimately stopped near the southern edge of the parking lot. [Supp. App'x Vol. I, p. 265 at 73:2–9; **Exhibits 3-A** and **3-B**.] Officer Martinez commanded Ms. Sanchez to put up her hands, and when she complied, he called out four or five times for Officer Guzman to stop firing. [Supp. App'x Vol. I, p. 266 at 79:14–24 and 80:5–10.] But Officer Guzman could not hear these commands. [Supp. App'x Vol. I, p. 200 at ¶ 26.]

Officer Guzman stopped firing once he confirmed the Malibu had stopped. Officers Carns and McGrath did not open fire at this location. [Supp. App'x Vol. I, p. 200 at ¶¶ 26–27, pp. 205–06 at ¶¶14–15, pp. 211–12 at ¶¶ 16–17; **Exhibits 3-A** and **3-B**.] In total, the pursuit covered more than six miles and spanned three

jurisdictions, including Littleton, Englewood, and Denver. [Supp. App'x Vol. I, p. 230.][7]

## V.    <u>SUMMARY OF THE ARGUMENT</u>

The District Court properly concluded Plaintiffs failed to overcome the individual Defendants' qualified immunity. No pre-exiting legal authority, nor any current caselaw, requires police officers to refrain from using lethal force when they are confronted by a vehicle that drives in a manner that would place a reasonable officer in fear of their life, the safety of fellow officers, and/or the public. This Court should reject Plaintiffs' effort to eschew Supreme Court and this Circuit's authority establishing the burdens for overcoming qualified immunity, as well as their claim that the law in this area is clearly established without precedential support.

The decisions of the Supreme Court and this Circuit are contrary to Plaintiffs' position and make clear they bear the burden of providing pre-existing caselaw, particularized to the circumstances that confronted the officers here, that prohibited such conduct beyond debate. The theories Plaintiffs advance in this appeal—that the District Court was too strict in requiring Plaintiffs to meet said

---

[7] Google map tracing the approximate route of travel and distance covered. (This map is not representative of the complete route of travel, which involved numerous side streets, as described above).

burden—are unsupported and altogether ignore the well-established framework that guides the qualified immunity analysis. Simply put, because Plaintiffs failed to carry their burden under the second prong of qualified immunity, the District Court's grant of qualified immunity should be affirmed.

## VI.  <u>ARGUMENT</u>

### A.  THE DISTRICT COURT CORRECTLY HELD IT WAS PLAINTIFFS' BURDEN TO OVERCOME DEFENDANTS' QUALIFIED IMMUNITY.

Plaintiffs first argue the District Court erred by placing the burden on them to overcome Defendants' qualified immunity. This argument is belied by the numerous and longstanding binding opinions of this Court, which have repeatedly found that once a defendant official asserts qualified immunity, the burden shifts to the plaintiff to overcome that defense. *See, e.g.*, *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) ("Specifically, by asserting the qualified-immunity defense, Sheriff Glanz triggered a well-settled twofold burden that Ms. Cox was compelled to shoulder…"); *Felders v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (cleaned up); *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("When a defendant asserts qualified immunity at summary judgment, the burden shifts to

14

the plaintiff, who must clear two hurdles in order to defeat the defendant's motion."); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) ("The plaintiff initially bears a heavy two-part burden when the defendant pleads the defense of qualified immunity… Unless the plaintiff carries its twofold burden, the defendant prevails.").

Indeed, a more in-depth review of the binding precedent reveals the Court has utilized this burden-shifting approach for nearly 40 years. *See Lutz v. Weld Cnty. Sch. Dist. No. 6*, 784 F.2d 340, 342 (10th Cir. 1986) ("Where the affirmative defense of qualified immunity is properly raised, it is the plaintiff's burden to convince the court that the law is clearly established…") (citing *Davis v. Scherer*, 104 S.Ct. 3012, 3021 (1984)). Specifically, The *Lutz* Court appropriately derived the burden-shifting approach from the following excerpt in *Davis v. Scherer*: "'A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.'" *Id.* (quoting *Davis*, 104 S.Ct. at 3021).

While true various other circuits have decided, interpreted, and employed the burden-shifting framework differently (*see Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020) ("The First, Second, Third, Fourth, Ninth, and D.C.

15

Circuits place the burden on the defendant, while the Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits place it on the plaintiff.”))[8], those out-of-circuit decisions have no bearing on this Court, which has held time and time again that the burden of overcoming qualified immunity once it has been asserted rests entirely with the plaintiff. *United States v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986) (“It is well settled that the decisions of one circuit court of appeals are not binding upon another circuit.”); *Heard v. Barr*, 766 F. App'x 612, 618 (10th Cir. 2019) (same); *see also Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) (“When a § 1983 defendant raises the qualified immunity defense, the burden shifts to the plaintiff.”) (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002)).

Plaintiffs' general reliance on *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and *Gomez v. Toledo*, 446 U.S. 635 (1980) [Opening Br., pp. 11–13] is similarly unhelpful to their argument. For instance, Plaintiffs cite to *Harlow* in support of their proposition that the “burden of proving [qualified immunity] is necessarily upon the defendant asserting it.” [Opening Br., p. 12]. But *Harlow* made no such determination as to qualified immunity—only absolute immunity. *See* 457 U.S. at 812 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)). The Supreme Court in

---

[8] Citing Kenneth Duvall, *Burdens of Proof and Qualified Immunity*, 37 S. Ill. U. L.J. 135, 145 (2012) (collecting cases on this issue).

*Harlow* further acknowledged it had made no determination on which party carried the ultimate burden of proof in the qualified (or "good faith") immunity context. *Id.* at 815 n.24. Specifically, in the years leading up to *Harlow*, the Supreme Court decided *Gomez* (*supra*) and stated the following: "Since qualified immunity is a defense, the burden of *pleading it* rests with the defendant... We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith." *Gomez*, 446 U.S. at 640 (emphasis added). *Harlow*, in relying on *Gomez*, simply reiterated this point, stating: "Qualified or 'good faith' immunity is an affirmative defense that must be *pleaded* by a defendant official." *Harlow*, 457 U.S. at 815 (emphasis added). Neither *Harlow* nor *Gomez* described which party bore the ultimate burden of proof on qualified immunity once pled. But as this Court observed nearly four decades ago in *Lutz*, that question was put to rest in this Circuit (and four others) by the Supreme Court's *Davis* decision, which the *Lutz* court determined had placed the burden of overcoming qualified immunity squarely upon the plaintiff.

Plaintiffs do not argue that Defendants failed to properly "plead" or otherwise assert qualified immunity. [*See generally*, Opening Br.] Nor can they. Defendants correctly raised such defense at the motion to dismiss stage and again on summary judgment, by describing how (at all times throughout the course of

17

their conduct) they had acted under color of law as sworn police officers, while setting forth the requirements necessary to overcome their immunity within the context of this case. [*See generally*, Supp. App'x Vol. I, pp. 25–56, 162, 166–92, 231–50.] *Cf. Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 589 (10th Cir. 2020) (finding assertion of qualified immunity consisting of a six-sentence analysis "cursory at best" and thus insufficient). Because the record shows that Defendants satisfied their initial burden of asserting qualified immunity, the District Court was correct in finding that Plaintiffs bore the ultimate burden of proof in overcoming that defense.

Regardless, Plaintiffs' burden-shifting debate is meaningless. As was the case before the District Court at the summary judgment stage, and as discussed in more detail below, Defendants have outlined the state of the pertinent caselaw. The District Court properly concluded based upon the legal authority provided to it, that no clearly established law existed no matter who bore the burden. [*See* Appx, pp. 14–20.] The more critical question is whether as of June 30, 2017, the law had developed to the point of clearly notifying law enforcement that deadly force under these particularized circumstances violated the Fourth and/or Fourteenth Amendments. As shown below, this question was properly resolved in Defendants' favor.

**B.      THE DISTRICT COURT CORRECTLY HELD IT WAS PLAINTIFFS' BURDEN TO PROVIDE CLEARLY ESTABLISHED LAW.**

**1.      The clearly established law inquiry demands factual correspondence between legal precedent and the case at bar.**

The District Court properly concluded that Plaintiffs failed provide prior precedent demonstrating beyond debate that Defendants' individual actions violated clearly established law. Plaintiffs describe their burden at the second step of the qualified immunity analysis as merely having to demonstrate a public official had "fair notice" their conduct was unlawful.  [Opening Br., p 18.] Though true the Supreme Court in *United States v. Lanier*, 520 U.S. 259 (1997), characterized the "object of the clearly established law immunity standard" as one of "fair warning," as shown below, the Supreme Court and Tenth Circuit have refined the analysis over the last quarter century to require factual particularity and correspondence between pre-existing caselaw and the facts before the court. This is especially true for claims of excessive force. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (discussing clearly established law standards in the context of a Fourth Amendment excessive force claim); *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 12 (2021) (same). Consequently, the District Court committed no

error when it granted summary judgment due to Plaintiffs' inability to carry their burden.  [*See* App'x, pp. 218–19 and 220–24.]

The standards applicable to evaluating whether a right is "clearly established" are well defined:  A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id*. at 742 (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix*, 577 U.S. at 12 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Again, such specificity is especially important in the use of force context, where the Court has recognized "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. 7, 12, (2015). The Supreme Court, in *Kisela*, went further to explain that use of force "is an area of the law in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Kisela*, 138 S. Ct. at 1153 (quotations

omitted). This is critical given officers face circumstances that are "tense, uncertain, and rapidly evolving," which often force police officers to make "split-second judgments ... about the amount of force that is necessary in a particular situation." *Lewis v. City of Edmond*, 48 F.4th 1193, 1198 (10th Cir. 2022) (quotation omitted). "However tempting, [this Court] must avoid the '20/20 vision of hindsight' … [and] the relevant legal doctrine ... [must] apply to the factual situation the officer confronts." *Id*. (quotation omitted). The Supreme Court has consistently reaffirmed this particularity standard when assessing claims for excessive force. *See e.g.*, *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503–04 (2019) (acknowledging the clearly established law inquiry depends on the officer's specific actions); *Kisela,* 138 S. Ct. at 1152 (same); *Mullenix*, 577 U.S. at 12 (same); *Brosseau,* 543 U.S. at 198 (same).

> **2. The Supreme Court and Tenth Circuit have not backed away from the "particularity" requirement necessary to satisfy the clearly established law prong of qualified immunity.**

Faced with the above standard, Plaintiffs point to *Mayfield v. Bethards,* 826 F.3d 1252 (10th Cir. 2016), to argue that this Circuit has rejected the particularity standard described above and relied on by the District Court. [*See* Opening Br., p. 19.] They then turn to *Hope v. Pelzer*, 536 U.S. 730 (2002) and a series of related cases to argue the Supreme Court and Tenth Circuit have somehow lightened

Plaintiffs' burden. [*See* Opening Br., pp. 20–23.] These efforts to convince the Court to ignore more recent and binding precedent are misguided and unpersuasive.

First, *Mayfield*'s characterization of the applicable clearly established law inquiry is no longer good law. As Plaintiffs note, the Tenth Circuit, in citing its prior decision in *Pauly v. White*, 814 F.3d 1060 (10th Cir. 2016), identified the "fair notice" standard Plaintiffs seek to apply here. *See Mayfield*, 826 F.3d at 1258. But the Supreme Court, in *White v. Pauly*, 580 U.S. 73, 79 (2017) ("*Pauly*"), admonished this Circuit for its treatment of the clearly established law inquiry, stating:

> The panel majority misunderstood the 'clearly established' analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment.

*Pauly*, 580 U.S. at 79. Plaintiffs' reliance on *Mayfield* for the argument their burden is somehow relaxed is therefore misplaced. *Pauly* reinforced the Supreme Court's prior discussions of the stringent particularity standard that applies to the clearly established law analysis discussed in *Mullenix* and *Brosseau*, above. In short, the limited portion of *Mayfield* Plaintiffs rely on cannot serve to overturn the District Court's decision because it is no longer good law.

Nor does *Hope* or any of the other related decisions Plaintiffs contend lessen their burden—*Casey v. Federal Heights*, 509 F.3d 1278 (10th Cir. 2007), *Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012), and *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014)—undermine the District Court's grant of qualified immunity. [*See* Opening Br., pp. 20–23.] *Hope*'s holding, historically, has been applied to only the "rare obvious case," *Frasier v. Evans*, 992 F.3d 1003, 1021 (10th Cir. 2021)[9], involving "extreme circumstances," or "particularly egregious" misconduct. *See, e.g.*, *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (Recognizing that housing an inmate in a cell smeared with feces and covered in raw sewage "offended the Constitution" despite no direct precedent that such living conditions were deplorable and unsanitary). The Tenth Circuit has recently recognized that a plaintiff cannot use *Hope* as a crutch to avoid the particularity requirements of the clearly established law analysis. *See Surat v. Klamser*, 52 F.4th 1261, 1276 (10th Cir. 2022) (plaintiffs may not identify their claim through "extremely abstract rights" because this would convert the rule of qualified immunity "into a rule of virtually unqualified liability."). Ultimately, the Court "must assess whether "existing precedent [has] placed the statutory or constitutional question [at issue in this case] beyond debate." *Id.* (quoting *Mullenix*, 577 U.S. at 12).

---

[9] *Cert. denied*, 142 S. Ct. 427 (2021).

Even a cursory review of the facts at bar reveals this is not the sort of rare case that permits the application of general Fourth or Fourteenth Amendment principles to overcome qualified immunity. The recognition in *Thomas v. Durastanti*, 607 F.3d 655, 670–71 (10th Cir. 2010) that even a slow-moving vehicle can be used as a weapon, alone, should dissuade this Court from undoing the District Court's finding that this case (*i.e.*, one that arose in the "context of a car chase of potentially armed felony suspects by law enforcement officers," App'x, p. 221), is not the sort of obvious case contemplated by *Hope*. *Compare A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1198 (10th Cir. 2019) (Applying the *Hope* standard and finding "obvious clarity" where officials had undisputedly discriminated against similarly situated minors), *with Doe v. Woodard*, 912 F.3d 1278, 1299 (10th Cir. 2019) (rejecting plaintiffs' *Hope*-based argument her claims amounted to "the rare alleged violation of minimal Fourth Amendment standards that is so 'obvious' that a factually similar case is unnecessary for the clearly established law standard.").

To the extent Plaintiffs' cursory discussion of *Casey*, *Morris*, and *Booker* is meant to conjure some middle ground between *Hope* and the litany of decisions from the Supreme Court and this Circuit requiring factual similarity in this context, the Tenth Circuit has retreated from the "sliding scale approach" that emanated

24

from those decisions. In *Aldaba v. Pickens*, 844 F.3d 870 (10th Cir. 2016), this Court specifically noted that its prior reliance on such rationale resulted in the Supreme Court remanding the decision so that the Tenth Circuit could conform its clearly established law analysis to the fact-specific inquiry outlined in *Mullenix*. *Id*. at 874 n.1; *see also Luchetti v. New Mexico State Pers. Bd.*, 2022 WL 2678826, at *4 (10th Cir. July 12, 2022) (noting this approach "may arguably conflict with recent Supreme Court precedent on qualified immunity."); *Lowe v. Raemisch*, 864 F.3d 1205, 1211 n.10 (10th Cir. 2017) (same).

In recognition of these barriers to applying a relaxed standard, Plaintiffs resort to arguing the "Third, Sixth, Seventh, Eighth and Ninth Circuits" have all adopted more lenient clearly established law standards such that Tenth Circuit should follow suit. [*See* Opening Br., pp. 23–24.] This Circuit need not follow Plaintiffs down this rabbit hole given the wealth of controlling Supreme Court and in-Circuit precedent which establishes the appropriate analytical framework to assess Plaintiffs' use of force claims.

### C.    THE DISTRICT COURT CORRECTLY HELD PLAINTIFFS FAILED TO PROVIDE CLEARLY ESTABLISHED LAW.

Turning to the particularized clearly established law question, the District Court properly concluded that Plaintiffs failed to demonstrate each Defendant's respective actions violated clearly established law.

25

With respect to the first and second stops, generally, it should be reiterated that the only claims considered on summary judgment were premised on Fourteenth Amendment substantive due process, as the corresponding Fourth Amendment claims were dismissed under Fed.R.Civ.P. 12(b)(6) for lack of an underlying seizure. [*See* App'x, pp. 208–09.] Plaintiffs neglected to challenge that dismissal or otherwise amend the Complaint to reassert their Fourth Amendment claims following *Torres v. Madrid*, 141 S. Ct. 989 (2021) (wherein the Supreme Court subsequently overturned longstanding Tenth Circuit precedent by holding that a suspect is seized under the Fourth Amendment the instant they are struck by the officers' bullets, regardless of whether they continue to flee).[10] Accordingly, because these Fourth Amendment claims were dismissed at the pleading stage, it was Plaintiffs' burden on summary judgment to provide a case with sufficiently similar facts where an officer was deemed to have violated substantive due process. Like before, Plaintiffs have again failed to meet their burden.

The decisions set forth in the Opening Brief that involve a pre-detention use of force include *Carr*, *Garner*, *Vette*, and *Cavanaugh*. [Opening Br., pp. 30–33.]

---

[10] Marta Sanchez was intentionally shot at all three stops. Thus, in the wake of *Torres*, her Fourteenth Amendment claims must necessarily fail. *See Huff v. Reeves*, 996 F.3d 1082, 1091 (10th Cir. 2021) (dismissing substantive due process claim because "the Fourteenth Amendment is an inappropriate source for a constitutional claim in [this] context.").

These cases addressed claims arising under the Fourth Amendment, not substantive due process, and should have no bearing on Plaintiffs' operative claims with respect to stops one and two. What is more, these cases did not involve circumstances even remotely similar to those facing the Littleton Defendants at stops one and two (or at the time Officer Guzman rammed the Malibu prior to stop three), namely—a complex highspeed pursuit of multiple armed and violent felony suspects where officers were repeatedly exposed to being run down.[11] *See Bond*, 142 S. Ct. at 12 (reversing Tenth Circuit's denial of qualified immunity where court failed to identify a binding case with sufficiently similar facts, noting that "[s]uch specificity is 'especially important in [this] context,' where it is 'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'") (internal citation omitted).[12] Though Plaintiffs also cite to *Estate of Booker v.*

---

[11] Further, Plaintiffs Dominic Martinez and Stephanie Lopez failed to provide evidence they had been intentionally shot during these stops and identified no clearly established law demonstrating a violation of their rights under such circumstances. *See Mahdi v. Salt Lake Police Dep't*, 54 F.4th 1232, 1239 (10th Cir. 2022) (Dismissing Fourteenth Amendment due process claim, stating: "Our precedent [] requires that the intent to harm be directed at the plaintiff, not a third person").

[12] Thus, to the extent the Court finds that the force used during the first and second stops are properly addressed under the Fourth Amendment despite those claims

*Gomez* [Opening Br., p. 31], which did assess an excessive force claim under substantive due process, *Booker* involved a pretrial detainee who died at the hands of jail deputies while incarcerated, not a highspeed vehicle pursuit. 745 F.3d at 423. It is therefore too dissimilar and does not demonstrate, beyond debate, a violation of Plaintiffs' rights under these particular circumstances. *See Lewis*, 48 F.4th at 1198–99 (extending qualified immunity on this basis).

With respect to the third and final stop, Plaintiffs maintained a Fourth Amendment claim for excessive force against Officers Guzman and Martinez up to the point of summary judgment.[13] But like on summary judgment, Plaintiffs again refuse to engage *Mullenix* or the District Court's treatment of *Mullenix* (and corresponding precedent) as it relates to an officer's use of deadly force to stop a felon who evades capture through high-speed vehicular flight. [*See* App'x, pp. 87–88 and 220–24; Supp. App'x Vol. III, pp. 758–64.] *Mullenix*, however, is definitive

---

having been dismissed prior to summary judgment, Plaintiffs have similarly failed to provide clearly established law. *Lewis*, 48 F.4th at 1198–99.

[13] As discussed above, because the Fourth Amendment specifically applies to the third stop, the more generalized notion of substantive due process has no bearing on that stop and Marta Sanchez's Fourteenth Amendment claim should be dismissed. *Huff*, 996 F.3d at 1091 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)).

to the clearly established law analysis for each stop in this case, especially stop three.

As outlined above, Officer Guzman fired multiple rounds at Marta Sanchez through the Malibu's rear windshield as she was accelerating toward Officer Martinez.[14] Both Officer Guzman and Officer Martinez ordered Plaintiffs to stop before opening fire, but they again did not comply. It is also undisputed that Marta Sanchez steered the Malibu toward Officer Martinez and was within feet of striking him. Plaintiffs had similarly driven at Officer Guzman just minutes before and Officer Guzman concluded they were again attempting to injure officers in furtherance of their efforts to escape at all costs, while simultaneously posing a sever threat to the public.

The Supreme Court's consideration of deadly force used to stop a felon who evaded capture through "high-speed vehicular flight" in *Mullenix* frames the proper analysis of the clearly established law inquiry. *Id. at* 13–14. There, the Supreme Court looked to its previous decisions in *Scott v. Harris*, 550 U.S. 372 (2007) and *Plumhoff v. Rickard*, 572 U.S. 765 (2014). *Scott* held that an officer

---

[14] As well, because Officer Guzman had no intentions of shooting Stephanie Lopez during the third stop, her Fourth Amendment claim fails. *See Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1213 (10th Cir. 2017) (finding no clearly established law to support claim of passenger who was shot inadvertently during a vehicle pursuit).

may use deadly force to subdue a fugitive whose reckless driving posed an "actual imminent threat" to pedestrians who might be present.   550 U.S. at 384. The *Plumhoff* decision reaffirmed *Scott* by holding an officer acted reasonably when he fatally shot a fugitive "intent on resuming" a "chase that pose[d] a deadly threat" to civilians, to include continuing to shoot at the suspect despite the fact he had already driven some distance down the road, such that the officers were out of harm's way. 572 U.S. at 777. Critically, in performing the clearly established law analysis, the *Mullenix* Court concluded that prior precedent did not "squarely govern[]" the facts before it—whether an officer who is not in imminent danger shoots a felon trying to avoid capture by driving at high rates of speed and who had previously threatened officers. 577 U.S. at 14–15. Because the Supreme Court had never addressed that set of facts in the context of a Fourth Amendment claim, it could not say only someone "plainly incompetent" or who "knowingly violate[d] the law" would have "perceived a sufficient threat and acted as [Trooper] Mullenix did." *Id*. at 15. Thus, the Supreme Court determined Trooper Mullenix was entitled to qualified immunity. *Id.*

The dispositive question here, then, remains whether as of June 30, 2017, binding Fourth Amendment jurisprudence had sufficiently developed to prohibit an officer from using deadly force who was in danger, who feared another officer was

in danger, and/or who feared for public safety in circumstances involving (1) an armed carjacking where suspects had reportedly shot at the victim, (2) a protracted high-speed chase where the suspects continued to flee despite multiple attempted immobilization maneuvers, (3) an exchange of gunfire by various officers, and (4) the suspects using their vehicle as a deadly weapon. *See id*. at 12 (the "dispositive question is whether the violative nature of particular conduct is clearly established.") (quotations omitted).

Like in *Mullenix*, the District Court properly acknowledged there is no clear answer here. [*See* App'x, p. 223–24.] This Circuit has not found a Fourth Amendment violation involving the use of deadly force to stop a fleeing felony suspect who drives toward an officer, thereby endangering the officer, or who's conduct endangers the general public. To the contrary, this Court's recent opinions have trended in Defendants' favor. *See, e.g.*, *Carabajal*, 847 F.3d at 1209-10 (granting qualified immunity to officer who fired two rounds at a driver of a car who slowly advanced toward the officer during a traffic stop); *Thomas*, 607 F.3d at 670–71 (holding ATF agent "was justified in using deadly force" when he fired several shots at the driver of a car who slowly advanced toward the agent while attempting to leave a gas station parking lot).

Plaintiffs have yet to point to any precedent that developed between *Mullenix* and these events that demonstrate how any Defendant violated their clearly established Fourth and/or Fourteenth Amendment rights. Nor do Plaintiffs make any attempt to separate out Defendants' respective conduct, apparently hoping that the sum of their individual conduct will sway this Court's analysis. [*See* Opening Br., p. 33.] But this approach has been rejected when assessing individual liability. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants). Moreover, a careful review of Plaintiff's cited caselaw reveals a complete lack of any factual correspondence to any of the three stops. [*See, e.g.*, Opening Br., pp. 30–32 (citing *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021)[15] (denying qualified immunity to officer who, after the suspect was subdued, deployed his police dog, punched the suspect, and struck the suspect in the face with a dog chain), and *Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010) (denying qualified immunity to officer for tasing a non-fleeing, non-threatening misdemeanor suspect without warning who

---

[15] Additionally, cases such as *Vette* that post-date this incident do not provide fair notice for purposes of overcoming qualified immunity and are therefore of no use to the clearly established law analysis here. *Kisela*, 128 S.Ct. at 1154.

he knew was unarmed). Given the factual dissimilarity between these cases and the present one, the District Court properly concluded that none of these decisions could have put Defendants on notice their conduct violated Plaintiffs' clearly established Fourth Amendment rights in the context of a multifaceted high-speed pursuit of potentially armed felony suspects through metro Denver. [*See* App'x, pp. 221–23 (distinguishing precedent highlighted by Plaintiffs from the actual circumstances of the case).]

Plaintiffs have not presented any factual or legal basis justifying reversal of the District Court's decision to dismiss their claims. Specifically, they have again failed to meet their burden of overcoming Defendants' qualified immunity by demonstrating a clearly established constitutional violation under the objective facts of this case, let alone as to each Defendant with respect to each individualized use of force.

## VII.  <u>CONCLUSION</u>

For the reasons presented herein and in the briefing on Defendants' dispositive motions, the District Court's judgment was correct and should therefore be affirmed.

## VIII.     <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendants request oral argument to address any questions the Court may

have and/or any issue the Court may deem appropriate to raise.

Respectfully submitted,

/s/ Eric M Ziporin
***Eric M. Ziporin***
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO  80210
Telephone: (303) 320-0509

/s/ Jonathan N. Eddy
***Jonathan N. Eddy***
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO  80210
Telephone: (303) 320-0509
*Attorneys for Littleton Defendants/*
*Appellees*

/s/ Josh A. Marks
***Josh A. Marks***
Berg Hill Greenleaf Ruscitti LLP
1712 Pearl Street
Boulder Colorado 80302
Telephone:  303-402-1600

/s/ David J. Goldfarb
***DJ Goldfarb***
Berg Hill Greenleaf Ruscitti LLP
1712 Pearl Street
Boulder Colorado 80302
Telephone:  303-402-1600
*Attorneys for Appellee Brian Martinez*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPE FACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.     This brief complies with the type-volume limitation of Fed.R.App.P. 32(g) because this brief contains 7,747 words. This was determined using Microsoft Word's word counting feature.

2.     This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type of style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point, Times New Roman.

Date:  March 13, 2023.

s/ Eric M. Ziporin
Eric M. Ziporin

s/ Jonathan N. Eddy
Jonathan N. Eddy
*Attorneys for Littleton Defendants*

s/ Josh A. Marks
Josh Marks

s/ David J. Goldfarb
DJ Goldfarb
*Attorneys for Defendant Brian Martinez*

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>
## <u>AND PRIVACY REDACTIONS</u>

I hereby certify that with respect to the foregoing:

(1) No privacy redactions were required per 10th Cir. R. 25.5;

(2) If required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Trend Micro Worry-Free Business Security Agent, and according to the program are free of viruses.


s/ Barbara A. Ortell
Legal Secretary

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 13th day of March, 2023, a true and correct copy of the above and foregoing **JOINT ANSWER BRIEF** was emailed in PDF format to all parties of record and electronically filed with the Clerk of the Tenth Circuit Court via the CM/ECF system, which will send notification of such filing to the following email addresses:

Robert E. Barnes
robertbarnes@barneslawllp.com,
*Attorney for Plaintiffs/Appellants*

/s/ Barbara A. Ortell
Barbara A. Ortell, Legal Secretary