CASE NO. 22-1322

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| MARTA SANCHEZ, et al., | ) |
| | ) |
| *Plaintiffs-Appellants*, | ) |
| | ) |
| v. | ) |
| | ) |
| ANTHONY GUZMAN, et al., | ) |
| | ) |
| *Defendants-Appellees*. | ) |

On Appeal from the United States District Court
for the District of Colorado – Denver
The Honorable Judge Regina V. Rodriguez
D.C. No. 1:19-cv-01871-RMR-MEH

**APPELLANTS' BRIEF IN REPLY TO APPELLEES' JOINT ANSWER
BRIEF**
[ORAL ARGUMENT REQUESTED]

Respectfully submitted,

Robert E. Barnes
BARNES LAW
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: (310) 510-6211
Email: robertbarnes@barneslawllp.com

*Attorneys for Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................iv

ARGUMENT IN REPLY TO APPELLEES' ANSWER BRIEF.............................1

I.  THE ANSWER BRIEF FAILS TO REFUTE THAT THE DISTRICT
     COURT ERRONEOUSLY PLACED THE BURDEN UPON
     APPELLANTS TO PROVE APPELLEES WERE NOT ENTITLED TO
     QUALIFIED IMMUNITY ………………………………………………3

II. APPELLEES CANNOT REFUTE THAT THE DISTRICT COURT
     ERRED BY FAILING TO FOLLOW THE SUPREME COURT'S
     "FAIR NOTICE" STANDARD TO DETERMINE WHETHER IT WAS
     CLEARLY ESTABLISHED THAT THE APPELLEES' CONDUCT
     WAS UNCONSTITUTIONAL...................................................................8

     A.  The Answer Brief Does Not Refute That "Fair Notice" Is The
          Controlling Standard For Finding That A Constitutional Violation
          Was Clearly Established …………………………………………..9

     B.  The Answer Brief Does Not Refute That A Constitutional Violation
          May Be Clearly Established, Even In The Absence Of Any
          Factually Analogous Precedent …………………………………..14

     C.  The Answer Brief's "Factual Correspondence" Standard And All
          Fact-Confined Standards Like It, Have Consistently Been
          Dismissed By The Courts …………………………………………...16

III. THE ANSWER BRIEF FAILS TO REFUTE THAT SUFFICIENT
      AUTHORITY WAS PRODUCED TO COMPEL THE DISTRICT
      COURT TO FIND APPELLEES' CONSTITUTIONAL VIOLATIONS
      WERE CLEARLY ESTABLISHED …………………………………..19

      A.  The Answer Brief's Reliance On The Supreme Court's Decision In
           Mullenix Does Not Support That Insufficient Authority Existed For
           The District Court To Deny Qualified Immunity ………………..19

B.  The Answer Brief's Disingenuous Attempt To Introduce Appellees'
    Interpretation Of Events Was Not Considered By The District
    Court, And Should Be Summarily Disregarded For Purposes Of
    This Appeal …………………………………………………23

CONCLUSION ................................................................................26

CERTIFICATE OF COMPLAINCE …………………………………..27

CERTIFICATE OF DIGITAL SUBMISSION …………………………..28
CERTIFICATE OF SERVICE …………………………………………...29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aldaba v. Pickens,*
844 F.3d 870 (10th Cir. 2016) ……………………………………….22

*Carr v. Castle,*
337 F.3d 1221 (10th Cir. 2003) …………………………………………...23

*Casey v. City of Federal Heights,*
509 F.3d 1278 (10th Cir. 2007) ………………………………………...13

*City of Tahlequah, Oklahoma v. Bond,*
142 S. Ct. 9 (2021) …………………………………………………..9-10

*Davis v. Scherer,*
104 S.Ct. 3012 (1984) …………………………………………...1, 5-7

*Estate of Booker v. Gomez,*
745 F.3d 405 (10th Cir. 2014) ……………………………………….13

*Gomez v. Toledo,*
446 U.S. 635, 100 S.Ct. 1920 (1980) …………………………1, 4-5, 7

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ................................................................ 1, 3-5, 7

*Hope v. Pelzer,*
536 U.S. 730 (2002) ………………………….............................14-16

*Kisela v. Hughes,*
138 S. Ct. 1148 (2018) …………………………………………9-11

*Lytle v. Bexar County,*
560 F.3d 404 (2009) ……………………………………………….21-22

*Mayfield v. Bethards,*
826 F.3d 1252 (10th Cir. 2016) …………………………………11-13

*McDonald by McDonald v. Haskins,*
    966 F.2d 292 (7th Cir. 1992) ……………………………………...16

*Morris v. Noe,*
    672 F.3d 1185 (10th Cir. 2012) …………………………………13-15

*Mullenix v. Luna,*
    577 U.S. 7 (2015) ……………………………………………11, 19-23

*Pauly v. White,*
    814 F.3d 1060 (10th Cir. 2016) ………………………………………...12

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ………………………………………………………...23

*Tolan v. Cotton,*
    572 U.S. 650 (2014) ……………………………………………………...25

*Torres v. Madrid,*
    141 S.Ct. 989 (2021) …………………………………………………..25

*United States v. Lanier,*
    520 U.S. 259 (1997) …………………………………………2, 9-10, 12-18

*White v. Pauly,*
    580 U.S. 73 (2017) ……………………………………………………12-13

**ARGUMENT IN REPLY TO APPELLEES' ANSWER BRIEF**

The Answer Brief[1] fails to provide support for the District Court's erroneous placement upon plaintiff Appellants, of the burden of disproving qualified immunity. The Supreme Court has consistently held that qualified immunity is an affirmative defense, and as such the burden of the defendant asserting it, to prove. The Answer Brief attempts to argue that the Supreme Court's watershed decisions in *Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ("*Harlow*") and *Gomez v. Toledo,* 446 U.S. 635 (1980) ("*Gomez*") limited the defendant asserting qualified immunity to shoulder the burden of properly pleading that affirmative defense. The Answer Brief goes on to contend that subsequent precedent, including *Davis v. Scherer* 104 S.Ct. 3012 (1984) ("*Davis*"), subsequently established that the burden shifts to the plaintiff to actually prove that the defendant is not entitled to the affirmative defense of qualified immunity, after the defendant first pleads it properly. However, this rootless two-faceted standard is not what the Supreme Court has held in any decision, including in *Davis*. Moreover, as discussed more thoroughly in Appellants' Opening Brief[2], the majority of Circuit Courts have held the same,

---

[1] "Answer Brief" herein refers to Defendants – Appellee's Joint Answer Brief and Appellees' Joint Supplemental Appendix filed March 13, 2023.
[2] "Opening Brief" herein refers to Plaintiffs - Appellant's Opening Brief and Appendix of Appellant filed December 28, 2022.

that the burden is upon the defendant asserting qualified immunity to plead and prove it. To the extent Circuit decisions may hold otherwise, this Court should not follow them for purposes of this appeal.

Additionally, the Answer Brief fails to controvert that this Court should reverse the dismissal of Appellants' claims on the grounds the District Court employed the wrong standard in ruling it was not clearly established that Appellees' conduct violated Appellants' Constitutional rights. The proper standard was whether the Appellee officers had "fair notice" or "fair warning" that their conduct was unlawful. The Answer Brief fails to distinguish *U.S. v. Lanier*, 520 U.S. 259 (1997) ("*Lanier*") in this regard, where the Supreme Court held that the determinative factor is whether the government actor had "fair warning" that their conduct was unconstitutional. *Id.,* at 270-271. Nor does the Answer Brief address, much less controvert, that controlling authority including decisions from this Court, explicitly hold that unconstitutional conduct may exist even in the complete absence of any factually analogous precedent. Instead, the Answer Brief erroneously contends that Appellees are entitled to qualified immunity unless Appellants can produce controlling authority with "factual correspondence" to the conduct at issue. This is an impossibly over narrow standard that is entirely impractical in application. Moreover, this very kind of fact-confined standard for determining clearly established constitutional violations has been rejected time and

2

again by the Supreme Court and Circuit Courts, including the Tenth Circuit. By failing to discuss, much less make findings, as to whether any of the Appellees had fair notice that their acts were unconstitutional (whether precedent with sufficiently analogous facts existed or not), the District Court committed error that must be reversed by this Court.

Finally, reversal of the District Court's dismissal of Appellants' claims is also independently warranted, on the grounds its Order of Dismissal[3] failed to properly consider the authority presented to it by the Appellants in opposing Appellees' summary judgment motion. The Answer Brief fails to meaningfully argue or cite authority supporting otherwise.

## I.     THE ANSWER BRIEF FAILS TO REFUTE THAT THE DISTRICT COURT ERRONEOUSLY PLACED THE BURDEN UPON APPELLANTS TO PROVE APPELLEES WERE NOT ENTITLED TO QUALIFIED IMMUNITY

Appellees argue that the District Court properly placed the burden upon Appellants to prove that Appellees were not entitled to the affirmative defense of qualified immunity, on the grounds that the Supreme Court's decisions in *Harlow* and *Gomez* do not describe which party bears the "ultimate burden of proof" on

---

[3] "Order of Dismissal" refers herein to the District Court's Order dated August 30, 2022 adopting the Recommendation of United States Magistrate Judge Michael E. Hegarty, granting Appellees' Motion for Summary Judgment on all remaining claims in the case, set forth in Appellants' Opening Brief Appendix ("App."), at App. 205-227.

qualified immunity. Answer Brief, pp. 14-18. The Answer Brief concedes that although *Harlow* and *Gomez* explicitly hold that the defendant asserting qualified immunity bears the burden of properly pleading that affirmative defense, the burden then shifts to the plaintiff to prove that qualified immunity doesn't apply after the defendant properly alleges that affirmative defense at the pleading stage first. *Id.,* at pp. 16-18. However, neither *Harlow*, *Gomez* nor any other decision supports such a strained interpretation of qualified immunity.

As stated in the Answer Brief: "*Harlow,* in relying on *Gomez,* … stat[ed]: 'Qualified or 'good faith' immunity is an affirmative defense that must be ***pleaded*** by a defendant official. [citing *Harlow, supra,* 457 U.S. at 815"]" (emphasis added by Appellees) Answer Brief, pg. 17. The Answer Brief neglects however, to include subsequent language in *Harlow,* that: "if the official pleading the defense [of qualified immunity] claims extraordinary circumstances ***and can prove*** that he neither knew nor should have known of the relevant legal standard, the defense should be sustained." (emphasis added) *Id.,* at 818-819. Thus, contrary to the Answer Brief's assertions otherwise, *Harlow* never held that the "ultimate burden of proof" was upon the plaintiff to prove that the defendant wasn't entitled to qualified immunity. Indeed, as revealed by the passage cited immediately above, the *Harlow* opinion made clear that the burden remained upon the defendant asserting qualified immunity to "prove" that affirmative defense, such as where the

4

defendant was claiming extraordinary circumstances regarding the relevant standard or not. *Harlow, supra,* 457 U.S. at 818-819.

Nor does *Gomez* support Appellees' argument that the only burden borne by the defendant asserting qualified immunity is to properly plead that affirmative defense. Like *Harlow*, the *Gomez* holding was that the burden was upon the defendant to adequately plead an affirmative defense of qualified immunity, the precise issue before the Supreme Court in both decisions. However, and also like *Harlow,* the *Gomez* court did not expressly nor impliedly limit the defendant's burden to the pleadings stage. In fact, there is language in *Gomez* as well that the "ultimate burden of proof" as the Answer Brief puts it, rests upon the defendant asserting qualified immunity:

> "Moreover, this Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action; instead we have described it as a defense available to the official in question. … Our conclusion as to the allocation of the burden of pleading is supported by the nature of the qualified immunity defense. As our decisions make clear, whether such immunity has been established depends on facts peculiarly within the knowledge and control of the defendant." *Gomez, supra,* 446 U.S. at 640-641.

The Answer Brief also contends that the Supreme Court's decision in *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012 (1984) ("*Davis*") "put to rest" that the burden of overcoming qualified immunity was "squarely upon the plaintiff". Answer Brief, pg. 17. For purposes of this appeal, Appellees contend that after *Davis*, the Supreme Court clarified that although defendants have the burden of

5

pleading qualified immunity, the burden switches to plaintiffs to prove it at the summary judgment stage. This is not what *Davis* holds however. In *Davis,* the issue under review was whether: "…a defendant official's violation of a clear statute or regulation, although not itself the basis of suit, should deprive the official of qualified immunity from damages for violation of other statutory or constitutional provisions." *Davis, supra,* 468 U.S. at 193. In affirming qualified immunity in that case, the *Davis* court was principally concerned that requiring the district courts to wade into the weeds of state and municipal administrative regulations to determine whether it was clearly established that the conduct at issue was wrongful (even if not necessarily violative of the U.S. Constitution), would effectively trump one of the central purposes of qualified immunity -- which is to allow police officers who otherwise act lawfully to be free from insubstantial lawsuits at an early in the litigation. *Davis, supra,* 468 U.S. at 195-196.

The Answer Brief focuses on a notably brief language in the last paragraph of the *Davis* opinion, that: "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Id.,* at 197. However, the very last sentence of the *Davis* opinion that follows, states: "As appellee has made no such showing, the judgment of the Court of Appeals is reversed, …." *Ibid.* Accordingly, the Supreme Court

limited its holding in *Davis* to the facts and circumstances of the case before it, as it should have. However the *Davis* court did not weigh in, analyze nor provide supporting precedent, for Appellees' contention that the "ultimate burden of proof" of qualified immunity rests squarely upon a plaintiff bringing §1983 claims against government defendants. Nor did *Davis* overturn, expressly or impliedly, its decisions in *Harlow* or *Gomez*. Indeed, the portion of the *Davis* opinion written by Justice Brennan, with whom Justices Marshall, Blackmun, and Stevens joined, concurring in part and dissenting in part, makes it clear that the main opinion in *Davis* remained true to *Harlow*, which held that a government defendant must not merely plead, but "show" its entitlement to the affirmative defense of qualified immunity:

> "In *Harlow* [citation omitted], the Court decided that ***Government officials seeking to establish qualified immunity must show*** that the acts or omissions violating the plaintiff's rights were objectively reasonable—specifically, that the conduct at issue did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*, at 818, 102 S.Ct., at 2737. ***The Court today does not purport to change that standard***."

As such, the Answer Brief's argument that: "… the question was put to rest in this Circuit (and four others) by the Supreme Court's *Davis* decision, which the *Lutz* court determined had placed the burden of overcoming qualified immunity squarely upon the plaintiff" (Answer Brief, pg. 17) -- is incorrect. Qualified immunity is an affirmative defense like any other, and as such, the "ultimate

burden" of both pleading and proof, is upon the defendant asserting the defense. As discussed extensively in Appellants' Opening Brief, the majority of Circuit Courts hold the same. Opening Brief, pp. 13-16. To the extent Circuit decisions may still hold otherwise, including prior decisions by the Tenth Circuit, this Court should not follow them for purposes of this appeal, as doing so would amount to a decision on an important federal question in a way that conflicts with relevant decisions of the Supreme Court and other Circuit Courts.

## II. APPELLEES CANNOT REFUTE THAT THE DISTRICT COURT ERRED BY FAILING TO FOLLOW THE SUPREME COURT'S "FAIR NOTICE" STANDARD TO DETERMINE WHETHER IT WAS CLEARLY ESTABLISHED THAT THE APPELLEES' CONDUCT WAS UNCONSTITUTIONAL

The Answer Brief attempts to twist and turn long standing precedent to support that the failure of the District Court below to discuss, much less make findings as to whether the Appellee police officers had fair notice that their conduct was unconstitutional – was not reversible error. Appellee's argument is without merit. Fair notice is the unaltered controlling standard a district court is required to meet in making findings as to whether the clearly established element of qualified immunity exists in a case. Contrary to the Answer Brief's contentions otherwise, this is particularly so in the absence of factually analogous precedent. Controlling precedent has consistently reversed such fact-confined standards as

advocated in the Answer Brief and made by the District Court. Reversal by this

Court is independently warranted upon these grounds as well.

> **A.** **The Answer Brief Does Not Refute That "Fair Notice" Is The Controlling Standard For Finding That A Constitutional Violation Was Clearly Established**

Whether a claim against a government actor is shielded by qualified

immunity, rests upon whether the defendant had fair notice that their conduct

violated the Constitution. Appellees acknowledge, as they must, that the Supreme

Court in *Lanier* "characterized the 'object of the clearly established law immunity

standard' as one of 'fair warning,' …". Answer Brief, pg. 19. The Answer Brief

goes on to attempt escape from the Supreme Court's standard set forth in *Lanier*,

by arguing that "the Supreme Court and Tenth Circuit have refined the analysis

over the last quarter century to require factual particularity and correspondence

between pre-existing caselaw and the facts before the court." Answer Brief, pg. 19.

The Answer Brief cites two post-*Lanier* Supreme Court decisions to support

its analytical refinement theory regarding *Lanier*. However, neither *Kisela v.*

*Hughes*, 138 S. Ct. 1148 (2018) ("*Kisela*") nor *City of Tahlequah, Oklahoma v.*

*Bond*, 142 S. Ct. 9 (2021) ("*City of Tahlequah*") support Appellees' argument on

this issue. In *Kisela*, the Supreme Court reviewed whether qualified immunity

precluded claims of unconstitutional excessive force. Yet nowhere in *Kisela* did

the Supreme Court hold that factual particularity or correspondence now trumped

the fair notice standard it had established in *Lanier*. To the contrary, a responsible reading of *Kisela* reveals that the Supreme Court was careful to reaffirm several times that fair notice, and not scavenger hunts for directly on point factual precedent, controls clearly established analysis:

> "Because the focus is on whether the officer had ***fair notice*** that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. [citation] …'***[T]his Court's caselaw does not require a case directly on point for a right to be clearly established*** …' (citing *White v. Pauly*, 137 S.Ct. 548, 551 (2017))." *Kisela, supra,* 138 S.Ct. at 1152.

In *City of Tahlequah*, the Supreme Court revisited the clearly established element of qualified immunity in an excessive force claim context. Like in *Kisela*, it reiterated that the factual situation the officer confronts is to be examined with specificity in excessive force cases, in light of the quick decisions officers are required to make under such stressful circumstances. However again, nowhere in *City of Tahlequah* does the Supreme Court announce, nor even suggest, that *Lanier's* fair warning standard was reversed, revised or abandoned in any way. In fact, *Lanier* is not even mentioned once in the *City of Tahlequah* decision.

It is important to note that *Lanier's* fair notice standard does not mean, as suggested in the Answer Brief, that a reviewing court is to ignore or dismiss the facts of the dispute before it in determining whether a constitutional violation is clearly established. Rather, the factual particularity discussed in various decisions invites a reviewing court to examine the facts at issue closely, along with any

10

congruity those facts may or may not have with precedent. Yet whether or not the government actors in question had fair notice that their conduct was unconstitutional, remains the controlling umbrella standard that governs qualified immunity analysis. Indeed, the *Kisela* case discussed above and relied on in the Answering Brief, affirms this very point: "Precedent involving similar facts ***can*** help move a case beyond the otherwise hazy border between 'excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful. (citing *Mullenix v. Luna,* 136 S.Ct. 305, 312)." (emphasis added) *Kisela, supra,* 1153. However contrary to the arguments made in the Answer Brief otherwise, the factual particularity discussed in prior decisions does not somehow overrule the fair notice standard set forth in *Lanier,* that has governed the analysis of the clearly established element of qualified immunity for over a quarter century.

Nor does the Answer Brief find success in arguing that this Court's holding in *Mayfield v. Bethards,* 826 F.3d 1252 (10th Cir. 2016) ("*Mayfield*") that "fair notice" controls clearly established analysis, should effectively be disregarded. Answer Brief, pp. 21-22. In *Mayfield,* the plaintiff police officer made the same argument that Appellees make on this appeal (and the same reasoning adopted in the District Court's Order of Dismissal), that a clearly established constitutional violation cannot as a matter of law be found: "because there was no Supreme Court or Tenth Circuit case on point." *Mayfield, supra,* 826 F.3d at 1258; *compare:*

11

Answer Brief, pg. 33 [Given the factual dissimilarity between the[] cases [cited by Plaintiffs] and the present one, the District Court properly concluded that none of these decisions could have put Defendants on notice their conduct violated Plaintiffs' clearly established [] rights …"]; *compare:* Order of Dismissal, Opening Brief App. 221 ["[The case law cited by Plaintiffs] would not have put the officers on notice that their conduct at the third stop would violate Plaintiffs' clearly established … rights in the context of a car chase of potentially armed felony suspects by law enforcement officers."]. However, in *Mayfield*, this Court held without qualification, that: "The question is not whether there is a prior case with precisely the same facts, but 'whether the law put officials on fair notice that the described conduct was unconstitutional.' (citing *Pauly v. White,* 814 F.3d 1060, 1075 (10th Cir. 2016))." *Mayfield, supra,* 826 F.3d at1258; *see generally:* Opening Brief, pp. 19-20.

The Answering Brief argues that *Mayfield* is no longer good law on the basis of the Supreme Court's subsequent decision in *White v. Pauly,* 580 U.S. 73, 79 (2017) ("*Pauly*"). Answer Brief, pp. 21-22. This is not so. In *Pauly,* the Supreme Court remained true to its fair notice standard set forth in *Lanier* and its progeny discussed above. In fact the *Pauly* opinion cites *Lanier* directly and reaffirms it as follows:

///

"Of course, 'general statements of the law are not inherently incapable of giving fair and clear warning" to officers, [citing *Lanier, supra,* 520 U.S. at 271], but 'in the light of pre-existing law the unlawfulness must be apparent,' [citation omitted]." *Pauly, supra,* 580 U.S. at 79-80; *see also*: *Kisela, supra,* 138 S.Ct. at 1152: [T]his Court's caselaw does not require a case directly on point for a right to be clearly established …' (citing *White v. Pauly*, 137 S.Ct. 548, 551 (2017)).".

Moreover, the language in the *Pauly* opinion reveals that the "panel misunderstood" reference which the Answer Brief contends overruled *Mayfield* (Answer Brief, pg. 22)*,* instead relates merely to the Tenth Circuit's holding below to have erroneously found a Constitutional violation was clearly established under the factual circumstance of that case: "This is not a case where it is obvious that there was a violation of clearly established law. [citation omitted] … No settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers in instances like the one White confronted here." *Pauly, supra,* 580 U.S. at 80.[4] Accordingly, this Court's holding in *Mayfield* that fair notice controls the clearly established element of qualified immunity, as opposed to a fishing expedition for factually analogous precedent, remains good law that the District Court below was bound to follow, but didn't.

_____

[4] No less than three other post-*Lanier* decisions of this Court, support the principle that fair notice is the proper standard for determining whether a constitutional violation was clearly established: *Casey v. City of Federal Heights,* 509 F.3d 1278 (10th Cir. 2007); *Morris v. Noe,* 672 F.3d 1185 (10th Cir. 2012) and *Estate of Booker v. Gomez,* 745 F.3d 405 (10th Cir. 2014); *see:* Opening Brief, at pp. 21-23.

**B.     The Answer Brief Does Not Refute That A Constitutional Violation May Be Clearly Established, Even In The Absence Of Any Factually Analogous Precedent**

In addition, the Answer Brief fails to address, much less controvert, that controlling authority explicitly holds that unconstitutional conduct may exist even in the complete absence of any factually analogous precedent whatsoever. For example, as this Court held in *Morris v. Noe,* 672 F.3d 1185 (10th Cir. 2012) ("*Morris*"): "we may conclude a constitutional right was clearly established, ***even in the absence of similar prior cases***, if the force is clearly unjustified." (emphasis added) *Id.,* at 1197; *see also* Opening Brief, pp.19-22.

This Court's holding in *Morris* aligns with *Hope v. Pelzer,* 536 U.S. 730 (2002) ("*Hope*"), another post-*Lanier* decision, in holding that the fair warning standard rendered constitutional violations clearly established even in novel factual situations:

> "This Court's opinion in [*Lanier*] … makes clear that officials can be on notice that their conduct violates established law ***even in novel factual situations***. Indeed, the [*Lanier*] Court expressly rejected a requirement that previous cases be 'fundamentally similar'." (emphasis added) *Hope, supra,* 536 U.S. at 731.

The Answer Brief makes no meaningful attempt to controvert or distinguish the line of decisions holding that a constitutional violation may be clearly established, even in the absence of factually aligned precedent. The Answer Brief simply makes the conclusory assertion that: "Nor does … [*Morris*] … undermine

the District Court's grant of qualified immunity." Answer Brief, pg. 23. Yet the Answer Brief does not explain how the District Court's failure to consider whether Appellants' constitutional rights were clearly established notwithstanding the absence of cases with sufficiently analogous facts, is consistent with this Court's holding in *Morris* or the Supreme Court's holdings in *Hope* and *Lanier* as to whether Appellees nevertheless had fair notice that their conduct was unlawful.

Moreover, the Answer Brief's attempt to dismiss the significance of *Hope*, is relegated to contending that: "*Hope'*s holding, historically, has been applied to only the 'rare obvious case,' …" Answer Brief, pg. 23. In *Hope,* the Supreme Court held that notwithstanding the absence of factually analogous precedent clearly establishing the conduct under review was unconstitutional, that: "A reasonable officer would have known that using a hitching post as Hope alleged was unlawful. The obvious cruelty inherent in the practice should have provided respondents with some notice that their conduct was unconstitutional." *Hope, supra,* 536 U.S. at 731. Thus whether couched in terms of the "rare obvious case" or "obvious cruelty", the Appellee officers in the instant case should be charged with having fair notice that firing 66 bullet shots into a vehicle occupied by three unarmed people who were attempting to surrender and posed no observable threat

to the officers, was unlawful.[5] As aptly surmised by the Seventh Circuit in

*McDonald by McDonald v. Haskins,* 966 F.2d 292, 295 (7th Cir. 1992):

> "In sum, that no precisely analogous case exists does not defeat [the
> plaintiff's] claim. It would create perverse incentives indeed if a
> qualified immunity defense could succeed against those types of
> claims that have not previously arisen because the behavior alleged is
> so egregious that no like case is on the books."

### C.   The Answer Brief's "Factual Correspondence" Standard And All Fact-Confined Standards Like It, Have Consistently Been Dismissed By The Courts

In *Hope, supra,* 536 U.S. at 730, the Supreme Court reversed the Eleventh

Circuit's attempt to invent a "materially similar" standard, in place of the "fair

notice" standard it set forth in *Lanier*. *Lanier*, in turn, expressly overruled the Sixth

Circuit's previous attempt to invent a fact-constrained standard for finding the

clearly established element, it described as follows: "only when the right has been

held to apply in a factual situation 'fundamentally similar' to the one at bar.

*Lanier, supra,* 520 U.S. at 259; *see also*: Opening Brief, pp. 20-22. The Supreme

Court's unwavering dismissal of attempts by the Circuit Courts to formulate

standards restricted to factual congruity between precedent and the conduct at

issue, aligns with its holding in *Lanier* that:

_____

[5] As discussed in Appellants' Opening Brief, said facts were properly assumed true
for purposes of the District Court's *de novo* review of Appellees' underlying
summary judgment motion. Opening Brief App. 4 and 226; *see further discussion,
supra,* at pp. 23-25 below.

> "[t]he qualified immunity test is simply the adaptation of the fair warning standard to give officials (and, ultimately, governments) the same protection from civil liability and its consequences [] that individuals have traditionally possessed in the face of vague criminal statutes." *Lanier, supra,* 520 U.S. at 270-271.

The Answer Brief's arguments regarding the clearly established element of qualified immunity, rest upon a standard Appellees describe as "factual correspondence" between the conduct at issue and precedent. Answer Brief, pp. 19-21. However, "factual correspondence" is a standard entirely invented by Appellees. No case cited in the Answering Brief discusses such a standard, and none exists. Moreover, Appellees' application of its fictional "factual correspondence" standard here, is ridiculously over narrow. According to the Answer Brief, the only way Appellants could have met their burden of showing that Appellees violated a clearly established constitutional right, was to have produced Supreme Court and/or 10th Circuit authority with facts on all fours with all of the following circumstances:

> "The dispositive question here, then, remains whether as of June 30, 2017, binding Fourth Amendment jurisprudence had sufficiently developed to prohibit an officer from using deadly force who was in danger, who feared another officer was in danger, and/or who feared for public safety in circumstances involving (1) an armed carjacking where suspects had reportedly shot at the victim, (2) a protracted high-speed chase where the suspects continued to flee despite multiple attempted immobilization maneuvers, (3) an exchange of gunfire by various officers, and (4) the suspects using their vehicle as a deadly weapon." Answer Brief, pp. 30-31.

17

This long and arduous standard is nowhere near the proper one, as discussed in more detail above and in Appellants' Opening Brief. *Id.,* at pp. 18-27. In essence, the Answer Brief advances an impossible to meet standard, where the conduct at issue must align in nearly all respects to controlling case law holding that qualified immunity didn't apply. Neither practicality nor precedent support such a grossly over narrow standard for finding a constitutional violation was clearly established.

As to the District Court, it did not explicitly rely upon Appellees' fictional "factual correspondence" standard either. However, the standard employed by the District Court in finding qualified immunity barred Appellants' claims was erroneous for the same reasons. Namely, the District Court ruled that a violation of a constitutional right cannot as a matter of law be clearly established for purposes of qualified immunity, unless Appellants could cite "binding authority from a car chase case" of "potentially armed felony suspects" with factually analogous circumstances to the case at bar. Opening Brief, at 26 (citing the District Court's Order of Dismissal at App. 221 and 223). Like the over narrow standard proposed in the Answer Brief, the District Court's fact-constrained standard is directly at odds with the Supreme Court's fair notice standard in *Lanier*, and the other

precedent discussed above and in the Opening Brief.[6] As such, the Answer Brief fails to support this Court affirming the District Court's Order of Dismissal. This Court should reverse accordingly.

## III.   THE ANSWER BRIEF FAILS TO REFUTE THAT SUFFICIENT AUTHORITY WAS PRODUCED TO COMPEL THE DISTRICT COURT TO FIND APPELLEES' CONSTITUTIONAL VIOLATIONS WERE CLEARLY ESTABLISHED

Though not their burden to do so (*see* Opening Brief, at pp. 11-18; *see also, supra,* at 3-8 above), Appellants produced sufficient authority for the District Court to deny qualified immunity to the Appellees, even upon the erroneously over narrow standards advanced in the Answer Brief and adopted by the District Court.

### A.   The Answer Brief's Reliance On The Supreme Court's Decision In *Mullenix* Does Not Support That Insufficient Authority Existed For The District Court To Deny Qualified Immunity

The principle authority relied upon by Appellees in arguing that insufficient precedent to satisfy the clearly established prong of qualified immunity was presented, is *Mullenix, supra,* 577 U.S. at 7:

///

_____

[6] It bears mention that the words "fair notice" or "fair warning" are not even in the District Court's 23 page Order of Dismissal, with the exception of once where it cites *Mayfield v. Bethards, supra*, 826 F.3d at 1258, in generally discussing the appropriate standard for finding a constitutional violation is clearly established. *See:* Opening Brief App. 219. Undisputably then, the District Court made no attempt to determine whether or not the Appellee officers had fair notice that their conduct was unlawful.

> "*Mullenix,* [] is definitive to the clearly established law analysis for
> each stop in this case, … The Supreme Court's consideration of
> deadly force used to stop a felon who evaded capture through 'high-
> speed vehicular flight' in *Mullenix* frames the proper analysis of the
> clearly established law inquiry. [citation]." Answer Brief, pp. 28-29.

However the *Mullenix* decision fails to support the District Court's dismissal

of Appellants' claims for no less than four reasons. First, as discussed above, the

Supreme Court holds that the factual intricacies of a given decision cannot in and

of themselves be "definitive", nor "frame" or be the "proper analysis" of whether a

public agent has fair notice that their conduct violates the constitution. *See: supra,*

at pp. 8-19 above.

Second, the District Court was careful to expressly state that it ***did not*** rely

on the *Mullenix* decision in entering its Order of Dismissal:

> "Plaintiffs argue that 'the Recommendation's reliance on *Mullenix v.*
> *Luna* is flawed as that case is clearly distinguishable from the present
> matter.' … ¶ However, whether the facts here are exactly 'on all
> fours' with the facts in *Mullenix* is not determinative. [citation] …
> what is determinative here is Plaintiffs' 'failure to cite binding
> authority from a car chase case,' which is 'fatal to their opposition of
> qualified immunity.'" Opening Brief App. 223.

Accordingly, the District Court did not, as the Answering Brief contends it

did or should have, rely upon the facts of the *Mullenix* decision to determine

whether or not it was clearly established that the Appellee officers' conduct was

unconstitutional. Nor, as revealed by the above-cited portion of the Order of

Dismissal, did the District Court even consider whether *Mullenix* was

distinguishable from the instant case at all. *Mullenix* thus cannot be considered to support or affirm the District Court's Order of Dismissal, as contended in the Answer Brief.

Third, the holding in *Mullenix* does not support the District Court's Order of Dismissal in any event. To the contrary, the Supreme Court in *Mullenix* actually reiterated the basic principles that underpin the clearly established element set forth in *Lanier* and its progeny discussed above. Namely, that although the specific facts of the case at bar should be closely examined, existing precedent directly on point is not required. *Mullenix, supra,* 577 U.S. at 12. Moreover, the Supreme Court expressly made room in the *Mullenix* opinion, for a constitutional violation involving excessive force in a high speed car chase case to be clearly established precluding qualified immunity, where circumstances such as the ones assumed true in the instant case exist:

> "[In] *Lytle v. Bexar County,* 560 F.3d 404 (2009), [the Fifth Circuit] den[ied] qualified immunity to a police officer who had fired at a fleeing car and killed one of its passengers. ***That holding turned on the court's assumption, for purposes of summary judgment, that the car was moving away from the officer and had already traveled some distance at the moment the officer fired. [citation]. The court held that a reasonable jury could conclude that a receding car 'did not pose a sufficient threat of harm such that the use of***

***deadly force was reasonable.' [citation].***" (emphasis added) *Mullenix, supra,* 577 U.S. at 16-17.[7]

Fourth and finally, the factual circumstances in *Mullenix* were distinguishable from the instant case. As argued by Appellant Plaintiffs to the District Court below, *Mullenix* involved a fleeing vehicle driving at speeds between 85 and 110 miles per hour. Opening Brief App. 223. Additionally, this Court in *Aldaba v. Pickens,* 844 F.3d 870 (10th Cir. 2016) articulated the key facts distinguishing *Mullenix* after closely reviewing that decision as follows:

> "'when Mullenix fired, he reasonably understood Leija to be a fugitive fleeing arrest, at speeds over 100 miles per hour, who was armed and possibly intoxicated, who had threatened to kill any officer he saw if the police did not abandon their pursuit, and who was racing towards [another officer's] position.' (citing *Mullenix, supra,* 577 U.S. at 18)." *Aldaba, supra,* 844 F.3d at 874.

The District Court appropriately assumed for purposes of its summary judgment ruling, that none of the Appellants were armed or an imminent threat to any of the officer Appellees, and in fact were attempting to surrender as the unfortunate incident that underlies the action below unfolded. Opening Brief App.

_____

[7] Again, that the Appellee officers in the instant case fired 66 bullet shots into a vehicle occupied by three unarmed people who were attempting to surrender and posed no observable threat to the officers, are facts to be assumed for purposes of this appeal, as they were by the District Court in ruling on Appellees' summary judgment motion. Opening Brief App. 208 and 226. The language in emphasis from the *Mullinex* opinion cited above regarding the Fifth Circuit's holding in *Lytle v. Bexar County,* 560 F.3d 404 (2009), is thus if anything entirely on all fours with the facts assumed in the instant case.

208 and 226. As such, the facts of the instant case are not only distinguishable

from those in *Mullenix*, but on their face constitute the "rare obvious case" of a

"particularly egregious" violation of Appellants' constitutional rights that merits

reversal of the District Court's dismissal of their claims. Consequently, whether or

not the Appellee officers in the instant case had fair notice that their conduct

violated Appellants' Constitutional rights, is more appropriately guided by the

decisions Appellants presented to the District Court in opposition to the Appellees'

summary judgment motion, and as discussed in Appellants' Opening Brief,

including *Tennessee v. Garner,* 471 U.S. 1 (1985) ("*Garner*") and *Carr v. Castle*,

337 F.3d 1221 (10th Cir. 2003) ("*Carr*"). Said decisions hold it to be clearly

established that in the "rare obvious case" where a police officer seizes an

unarmed, nondangerous suspect by shooting him dead, such "particularly

egregious" conduct unquestionably violates the Constitution. *Garner, supra,* 471

U.S. at 11-12; *Carr, supra,* 337 F.3d at 1227; *see also:* Opening Brief, pp. 30-33.

**B.**    **The Answer Brief's Disingenuous Attempt To Introduce Appellees' Interpretation Of Events Was Not Considered By The District Court, And Should Be Summarily Disregarded For Purposes Of This Appeal**

As a final matter, the Answer Brief attempts to contend that the District

Court's Order of Dismissal was founded upon certain "facts" that took place

during the incident. *See* Answer Brief, pp. 1-13 and 28-31. For example, the

Answer Brief contends:

"It is also undisputed that Marta Sanchez steered the Malibu toward Officer Martinez and was within feet of striking him. Plaintiffs had similarly driven at Officer Guzman just minutes before and Officer Guzman concluded they were again attempting to injure officers in furtherance of their efforts to escape at all costs, while simultaneously posing a sever[e] threat to the public." Answer Brief, pg. 29.

However, these purported facts are self-serving interpretations of what actually happened, and a rather obvious attempt to dupe this Court into believing the District Court relied upon these disputed facts in granting Appellees' summary judgment motion. More importantly, a plain reading of the Order of Dismissal readily reveals that none of the self-serving interpretations of the incident advanced in the Answer Brief were even considered by the District Court in granting Appellees' summary judgment motion:

"Upon *de novo* review of the motions for summary judgment and the record evidence, … the Court is skeptical whether, absent the qualified immunity issues discussed herein, there would remain no disputes of fact that would be suitable for a jury - … However, even if the Court were to find in favor of Plaintiffs and conclude that these disputes of fact raised material issues as to whether the officers' conduct was unconstitutional, this could not be sufficient to defeat summary judgment because Plaintiffs have not borne their burden on the second prong of the qualified immunity analysis, as discussed above." Opening Brief App. 226; *see also:* Opening Brief App. 208: ["However, Plaintiffs have failed to satisfy the 'clearly established' prong of the qualified immunity analysis. Therefore, as stated below, these disputes of facts are not material to the motions for summary judgment at issue."]; and Opening Brief, pg. 9.

Accordingly, the only issue on this appeal here is, assuming all material facts to be in genuine dispute, whether the District Court erred in granting

Appellees' summary judgment motion as a matter of law, on the grounds of qualified immunity. *Tolan v. Cotton,* 572 U.S. 650, 651 (2014) ["[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. (citation omitted)."; *compare:* Opening Brief App. 226 [District Court's list of material facts likely in dispute if not for its ruling granting qualified immunity].

    This Court therefore need not consider any of Appellees' contentions of "fact" in their Answer Brief (nor in their lengthy Appendix)[8], because said factual interpretations are irrelevant and the facts and record at issue in this appeal is already settled pursuant to the language of the District Court in its Order of Dismissal.[9]

///

///

---

[8] The specific portions of Appellees' Answer Brief to be disregarded for these reasons are at: Answer Brief, pp. 1-13 and 28-31; and the portions of the Answer Brief Appendix Appellees contend support the assertions made therein.

[9] For the sake of thoroughness, it bears mention that the Answering Brief's contention that the case of *Torres v. Madrid,* 141 S.Ct. 989 (2021) is in anyway prejudicial to this appeal, is false. *Torres* did not expressly preclude Appellants' claims against Appellees, at a bare minimum in relation to the third vehicle stop of the underlying incident.

## CONCLUSION

For the reasons set forth above, the District Court's Order of Dismissal and Judgment of Dismissal should be reversed and vacated by this Court.

Date: April 17, 2023

Barnes Law

/s/ Robert E. Barnes
Robert E. Barnes
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: (310) 510-6211
Email: robertbarnes@barneslawllp.com

*Attorneys for Appellants*

## CERTIFICATE OF COMPLAINCE

This Brief complies with the type-volume requirements of Federal Rule of Appellate Procedure 32(a)(7)(b)(ii) because it contains 6,304 words.

This Brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

/s/ Robert E. Barnes
ROBERT E. BARNES

APRIL 17, 2023

## CERTIFICATE OF DIGITAL SUBMISSION, ANTIVIRUS SCAN, AND PRIVACY REDACTIONS

I certify, pursuant to the Tenth Circuit's CM/ECF User's Manual, that the attached "APPELLANTS' BRIEF IN REPLY TO APPELLEES' JOINT ANSWER BRIEF", as submitted in digital form via CM/ECF, has been scanned for viruses using the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that any hard copies submitted are exact copies of the document submitted electronically, and that all required privacy redactions have been made.

/s/ Robert E. Barnes
ROBERT E. BARNES

APRIL 17, 2023

## CERTIFICATE OF SERVICE

I certify that on April 17, 2023, the foregoing "APPELLANTS' BRIEF IN REPLY TO APPELLEES' JOINT ANSWER BRIEF" was filed electronically with the Clerk of Court using the Court's CM/ECF system. I further certify that all parties required to be served have been served.


/s/ Robert E. Barnes
ROBERT E. BARNES

APRIL 17, 2023